## Commonwealth *vs.* Anthony Vardinski.[1]

Suffolk. October 8, 2002. - January 15, 2003.

Present: Marshall, C.J., Greaney, Spina, Cowin, Sosman, & Cordy, JJ.

*Identification. Practice, Criminal,* Assistance of counsel, Nolle prosequi, Instructions to jury, Argument by prosecutor. *Due Process of Law,* Identification. *Evidence,* Cross-examination, Identification, Photograph, Prior misconduct, Veterans' Administration records. *Constitutional Law,* Assistance of counsel.

At a criminal trial on charges of armed robbery and stealing by confining, in which the judge redacted from a mugshot form seen and signed by the complainant information concerning the defendant's prior arrest on a firearms charge, the judge unreasonably limited the defendant's ability to cross-examine the complainant, in violation of the defendant's Federal and State constitutional rights to do so, about the complainant's knowledge of the prior firearms charge against the defendant and the disposition of that charge, and the challenged evidentiary rulings of the judge were not only prejudicial to the defendant's strategy, but bolstered the Commonwealth's case by permitting the complainant's certainty about his identification of the defendant to stand without being subject to full cross-examination. [449-455]

This court discussed issues likely to arise at the retrial of indictments charging armed robbery and stealing by confining, including the admission of a nolle prosequi of a prior firearms charge to minimize the impact on the jury of information that was otherwise highly prejudicial [456]; the possibility of an instruction to the jury on "honest mistake" [456-457]; the admissibility of certain identifications of the defendant [457]; whether certain records of the Veterans Administration (VA) were discoverable by the defendant [457]; the admissibility in evidence of testimony that the defendant had been seen near a VA methadone clinic [457-458]; and the fairness of some of the prosecutor's statements in his closing argument [458].

Indictments found and returned in the Superior Court Department on February 3, 1998.

A pretrial motion to suppress evidence was heard by *Suzanne V. DelVecchio,* J.; the cases were tried before her, and a motion for a new trial also was heard by her.

[1]As is our custom, we spell the defendant's name as it appears on the indictments.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Rami M. Vanegas*, Assistant District Attorney, for the Commonwealth.

*Chauncey B. Wood* for the defendant.

MARSHALL, C.J. A Superior Court jury convicted the defendant of armed robbery, G. L. c. 265, § 17, and stealing by confining, G. L. c. 265, § 21. He was sentenced to a term of from nine to twelve years in a State prison on the first indictment and three years' probation on the second indictment. No physical evidence linked the defendant to the crime; the verdicts were based on the victim's identification of the defendant from a photographic array compiled by the police. The defendant appealed from his convictions and the denial of his motion for a new trial, arguing in part that he had been unfairly denied the opportunity to probe the reliability of the identification. The Appeals Court reversed the judgments and the order denying a motion for a new trial. See *Commonwealth* v. *Vardinski*, 53 Mass. App. Ct. 307, 317 (2001). We granted the Commonwealth's application for further appellate review.

The critical issue in this case is whether the defendant's constitutional and statutory rights to present a defense and to cross-examine witnesses were impermissibly limited by the judge's decisions (1) to preclude from evidence an exact version of the "mugshot"[2] used to identify the defendant, and (2) to prohibit the defense counsel from offering in evidence a prior charge against the defendant listed on the "mugshot" form and the disposition of that charge. We agree with the Appeals Court that these evidentiary rulings were reversible error mandating a new trial.

1. *Background.* We recite the facts as summarized by the Appeals Court, supplemented where necessary with undisputed material of record. On the morning of January 7, 1998, as he entered his place of business in Boston, William Morrissey was confronted by an unmasked stranger wielding a gun. After a tense encounter lasting between two and three minutes, during which the intruder continuously shouted at Morrissey and

---

[2]A full frontal and profile photograph of an individual is "commonly known as a mug shot." See *Commonwealth* v. *Blaney*, 387 Mass. 628, 634 (1982).

brandished a gun no more than two feet away from him, a "ter-rified" Morrissey surrendered to the robber two wallets and the contents of a safe. Immediately after the robbery, Morrissey notified the police.

What happened next is succinctly recounted by the Appeals Court:

"Two days following the robbery, at the request of Detective James Moy, Morrissey went to the police station to look at photographs of possible suspects. Morrissey described the person who had robbed him as a slightly built white male, approximately five feet, seven inches tall, and weighing approximately 130 to 140 pounds, but . . . gave no particularized details, such as the unusual hairline he testified at trial to having observed. Detective Moy set up a photo array using a computerized photo imaging machine — essentially an electronic mug book — by entering the general criteria provided by Morrissey as to the perpetrator's race, height and weight. A computer-ized data bank search generated the photographic images of 999 males meeting these criteria, meaning that there were likely more males that met these criteria but only the maximum number of 999 would be transmitted for viewing. Morrissey was instructed that he would be view-ing one image at a time, and that by clicking on a computer 'mouse' button he could advance to the next image after viewing each image for as long as he wished. At a certain point in the process Morrissey selected a photograph, number 82, of 'the man that robbed me.'[3] The photograph was of the defendant. Detective Moy printed a copy of the photograph selected by Morrissey. This printout contained the inscription 'Boston Police Department Mugshot Form' and included a front and profile view of the defendant. The printout also set forth the defendant's name and other identifying information, and listed a booking number, an October, 1997 booking date and the information that

---

[3]Morrissey testified at trial that the eighty-second mugshot that he viewed "jumped right off the screen," and that the photograph was a "carbon copy" of the man who had robbed him. He also testified that, "[i]t was unmistakable in my mind that this is the man who had robbed me." Morrissey testified further that he looked at the robber virtually the entire time because he was too afraid not to look at him. On cross-examination, he did admit to looking away several times and that at no time could he independently recall the rob-ber's eye color.

Anthony Vardinski had been arrested for illegal possession of a firearm on that date.[4] Morrissey signed the printout after viewing it, placing his signature on the front of the form next to this printed information."

*Commonwealth* v. *Vardinski, supra* at 311. In all, Morrissey viewed a total of 258 photographs. It should be noted that the image on the computer screen, selected by Morrissey as the "carbon copy" of the man who had robbed him, contained only the photograph of the defendant; it contained no reference to the Boston police department, nor did it contain any information identifying the defendant or his criminal history. Only the printout, which Morrissey did not see until after he made his initial identification from the computer image, contained the information, described above, relating to a prior charge.

After Morrissey had identified the defendant, law enforcement officials showed a photograph of the defendant to Lieutenant Richard Leeman with the Veterans Administration (VA) police department, who worked at the VA clinic across the street from Morrissey's place of business and who was in the vicinity at the time the crime was committed. Leeman, in turn, showed the photograph to a VA patient, Jorge Lebron Colon. Both men said that they had seen the defendant in the area, but could not confirm his presence there on the day of the crime. Neither man could remember precisely when he had seen the defendant.

Prior to trial, defense counsel moved to suppress Morrissey's pretrial identifications of the defendant.[5] The judge denied the motion. Having lost this key ruling, defense counsel adopted mistaken identification as the primary defense at trial. It is undisputed that the defendant was not permitted to develop this defense in the manner he desired. Specifically, defense counsel sought to introduce evidence that Morrissey's initial identification of the defendant from the computer image was reinforced and tainted by Morrissey's learning from the printed form of the mugshot he later signed that the defendant had been booked

---

[4] At trial, Detective Moy testified that he said nothing to Morrissey about the defendant's prior criminal history.

[5] After Morrissey identified the defendant from the photographic array, he identified the defendant from a lineup. Defense counsel moved to suppress both pretrial identifications.

on a prior firearms charge.[6] Defense counsel raised no objection when the Commonwealth introduced in evidence the mugshot signed by Morrissey that referenced the prior charge, but defense counsel did object when the judge, after a discussion of the exhibit at a sidebar conference requested by the Commonwealth, ordered the mugshot redacted before being shown to the jury.[7] When defense counsel attempted to mention the prior firearms charge and its disposition in his opening statement and later to witnesses, the judge prohibited him from doing so over his numerous and strenuous objections.[8]

In her charge, the judge did not include an instruction on "honest mistake," although taken as a whole the instructions did alert the jury that witnesses' identifications could be inaccurate. In the midst of their deliberations, the jury asked to be reinstructed on the standard for reasonable doubt. The judge repeated her instructions to the jury, and the jury returned guilty verdicts on both indictments.

Thus, the jury had before them during their deliberations an inexact copy of the printed mugshot that Morrissey signed, indicating only that Vardinski had been booked for a prior charge, the date of the booking, and that the photograph was a Boston police department mugshot. The jury had no information that the prior charge was for firearms possession, although Mor-

---

[6]To avoid a witness's exposure to potentially prejudicial information concerning a suspect, the printout of a computer image should contain no such information. Specifically, the printout should make no reference to any criminal history of the suspect, nor should it contain any other potentially prejudicial information, such as "Boston Police Department Mugshot Form."

[7]The judge redacted from the mugshot the description of the charge, "unlawful possession of a firearm," but did not redact "Boston Police Department Mugshot Form" printed at the top of the mugshot. Nor did she redact the information that the defendant had been "booked" on October 25, 1997.

[8]At a bench conference in the middle of defense counsel's opening statements, the prosecutor and defense counsel agreed that the October, 1997, firearms charge was nolle prossed. His opening statement continued:

DEFENSE COUNSEL: "[T]he little photograph shown to Mr. Morrissey . . . indicates that [the defendant] was [previously] arrested for possession of a firearm. That case, ladies and gentlemen, was dismissed and the police knew it was dismissed —"

THE PROSECUTOR: "Objection, Your Honor."

DEFENSE COUNSEL: "knew that he was the wrong person."

Immediately thereafter, the judge sustained the objection and issued a curative instruction to the jury.

rissey had this information at the time he signed and dated the photograph. Nor did the jury (or Morrissey) have information that the prior firearms charge had been nolle prossed. Against this backdrop, we consider the constitutional issues raised by the defendant.

2. *Constitutional claims.* The defendant claims that his State and Federal constitutional rights to present a defense and to cross-examine witnesses pursuant to the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights were violated when the judge refused to allow both a full cross-examination of the prosecution's witnesses and the introduction in evidence of the signed identification photograph in its original form.[9] See G. L. c. 263, § 5.[10,11]

---

[9]The defendant additionally argues that the judge committed reversible error in denying his motion to suppress Morrissey's identification from the photographic array and the subsequent lineup. Before the judge, the defendant argued that the identification should be suppressed because the identification procedure was impermissibly suggestive. On appeal, the defendant argued instead that if the victim's identification is admitted in evidence, the defendant's prior criminal history must necessarily be revealed to his prejudice because of the procedures used by the police to secure the identification. Because the suppression claims raised on appeal are not those argued before the judge, the suppression argument is not properly before the court, and we will not review it. *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). In any event, the defendant has failed to demonstrate that the identification procedure was impermissibly suggestive, as the Appeals Court correctly ruled. See *Commonwealth* v. *Vardinski*, 53 Mass. App. Ct. 307, 310 (2001). The photographic array contained a large number of photographs selected by a computer program and matching a general description. It was not in itself suggestive in any way, and the judge properly refused to suppress the identification. See *Commonwealth* v. *Payne*, 426 Mass. 692, 694 (1998).

[10]The Sixth Amendment to the United States Constitution provides, in part, that the accused has the right "to be confronted with the witnesses against him." Article 12 of the Massachusetts Declaration of Rights provides, in part, that "every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defense by himself, or his counsel at his election." The defendant has also raised claims based on G. L. c. 263, § 5, which provides: "A person accused of crime shall at his trial be allowed to be heard by counsel, to defend himself, to produce witnesses and proofs in his favor and to meet the witnesses produced against him face to face." The defendant's statutory claims are identical to his constitutional claims and, in any event, were only briefly discussed on appeal. We shall not consider them separately.

[11]The defendant has not claimed that he was denied the ability to procure

Because in this one witness identification case the right to cross-examine is so closely linked to the right to put on a defense, we shall discuss both under the more specific right to cross-examine. We must determine, first, whether the defendant's constitutional rights were violated, and, second, if a violation is found, whether reversal is warranted because the error was not harmless beyond a reasonable doubt. See *Commonwealth* v. *Miles*, 420 Mass. 67, 73 (1995) (violation of right to cross-examine must be reversed unless harmless beyond reasonable doubt).

Cross-examination has been called "the greatest legal engine ever invented for discovering the truth." *Maryland* v. *Craig*, 497 U.S. 836, 846 (1990), quoting *California* v. *Green*, 399 U.S. 149, 158 (1970). The right to cross-examine witnesses is fundamental to our criminal justice system. Where the issue at a criminal trial is identification, the right to cross-examine must be scrupulously protected. This is so because while many, if not the majority of, criminal cases turn on eyewitness identification of the defendant, see *Commonwealth* v. *Correia*, 381 Mass. 65, 75 (1980), "[e]yewitness identification of a person whom the witness had never seen before the crime or other incident presents a substantial risk of misidentification and increases the chance of a conviction of an innocent defendant." *Commonwealth* v. *Jones*, 423 Mass. 99, 109 (1996). "[S]tudies conducted by psychologists and legal researchers . . . have confirmed that eyewitness testimony is often hopelessly unreliable." *Commonwealth* v. *Johnson*, 420 Mass. 458, 467 (1995). Thus, "whenever eyewitness evidence is introduced against an accused," we "require the utmost protection against mistaken identifications." *Id.* at 465. It is crucial to the fact finder's assessment of the truth to allow the defendant to probe fully on

any witnesses. Although a criminal defendant's right to present a defense is guaranteed by the Sixth Amendment and art. 12, see *Commonwealth* v. *Dagenais*, 437 Mass. 832, 839 (2002), and usually concerns a defendant's ability to present witnesses on his or her behalf, the right to present a defense also encompasses the ability to produce documentary evidence. See, e.g., art. 12; G. L. c. 263, § 5. "Evidentiary rules of exclusion do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes that they are designed to serve.' " *Commonwealth* v. *McAfee*, 430 Mass. 483, 491 n.3 (1999), quoting *United States* v. *Scheffer*, 523 U.S. 303, 308 (1998).

cross-examination the infirmities of the identification. See *Commonwealth* v. *Dougan*, 377 Mass. 303, 316-317 (1979), quoting *Commonwealth* v. *Dickerson*, 372 Mass. 783, 789 (1977) ("Since eyewitness identification often plays a major, if not a determinative, role in the trial of criminal offenses, and the dangers of mistaken identification are great and the result possibly tragic, defendants must be allowed to examine fully during the voir dire hearing the *totality* of the circumstances" [emphasis in original]). A judge, of course, has broad latitude to direct the course of a trial, and this judicial discretion extends to limiting and otherwise controlling cross-examination. *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986). See *Commonwealth* v. *Miles, supra* at 71-72. But a judge's discretionary determination as to the scope of cross-examination will not stand if "the judge abused [her] discretion and . . . the defendant was prejudiced thereby." *Id.* at 72.

To determine whether the judge unreasonably limited cross-examination, "we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination." *Commonwealth* v. *Miles, supra.* Here, the photographic identification was unarguably material. It was the only investigatory tool that fixed suspicion on the defendant, "and both prosecution and defense had an interest in arguing whether a positive identification of the defendant on the basis of the photo array was plausible." *Commonwealth* v. *Smith*, 29 Mass. App. Ct. 449, 452 (1990). The Commonwealth's entire case rested on Morrissey's direct testimony identifying the defendant as the perpetrator of the crime. In this respect, Morrissey's identification of the defendant was not only material, it was crucial. See *Commonwealth* v. *Miles, supra.* Without this identification, the Commonwealth could not have proceeded against the defendant.

Just as surely, the success of the defendant's misidentification theory rested on the defendant's ability to instill reasonable doubt about the fairness and integrity of the identification process. When the judge restricted the defendant's ability to cross-examine Morrissey about his knowledge of the prior firearms charge against the defendant and the disposition of that charge, she eviscerated the defendant's trial strategy. The degree

of restriction on cross-examination, *Commonwealth* v. *Miles,* *supra* at 72, was extreme. We conclude that the judge unreasonably limited the defendant's ability to cross-examine Morrissey at trial, in violation of his Federal and State constitutional rights to do. See *id.* at 71-73. See also *Commonwealth* v. *Payton,* 35 Mass. App. Ct. 586, 595-596 (1993) (noting when mugshot is probative for defendant's purpose of questioning identification, it was proper not to sanitize mugshot).

Because the defendant's constitutional right to cross-examine was abridged, we must review the violation for prejudicial error. In *Commonwealth* v. *Miles, supra,* we concluded that "[t]he admission of testimony obtained in violation of a defendant's confrontation rights will not amount to reversible error 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " *Id.* at 73, quoting *Delaware* v. *Van Arsdall, supra* at 681. See *Commonwealth* v. *Vinnie,* 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998), quoting *Chapman* v. *California,* 386 U.S. 18, 23 (1967) ("Constitutional errors that were preserved . . . are reviewed to determine whether or not they were harmless beyond a reasonable doubt, unless the constitutional right infringed is 'so basic to a fair trial that [its] infraction can never be treated as harmless error' "); *Commonwealth* v. *Amirault,* 424 Mass. 618, 649 (1997) ("if a constitutional right has been preserved and there has been no waiver, then it can only be ignored if we are convinced that the error was harmless beyond a reasonable doubt"). Where the defendant's constitutional right to cross-examine has been denied, the prosecution bears the burden of establishing that the error was harmless. See *Commonwealth* v. *DiBenedetto,* 414 Mass. 37, 41 (1992), *S.C.,* 427 Mass. 414 (1998).

We consider several factors to determine whether the error was harmless: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 40, quoting *Delaware* v. *Van Arsdall, supra* at 684. We resolve all

ambiguities and doubts in favor of the defendant. *Commonwealth* v. *Maxim*, 429 Mass. 287, 291-292 (1999).

In this case, Morrissey's identification of the defendant was powerful. See notes 2 and 4, *supra.* However, his identification was the *only* evidence directly linking the defendant to the crime. To the extent that the identification was corroborated at all, it was corroborated only by two witnesses who placed the defendant in the general vicinity of the crime at some nonspecific time before or after it had happened. Under the standards set forth in *Commonwealth* v. *DiBenedetto, supra*, we cannot say that the restriction of the defendant's right to cross-examine the victim was either insignificant or harmless, let alone harmless beyond a reasonable doubt.[12] See *id.* The challenged evidentiary rulings were not only prejudicial to the defendant's strategy, they bolstered the Commonwealth's case by permitting Morrissey's certainty about the identification to stand without being subject to full cross-examination. Cf. *Delaware* v. *Van Arsdall*, 475 U.S. 673, 680 (1986). For these reasons the convictions must be reversed and the cases remanded for a new trial.

In so holding, we recognize that the judge may have assumed that she had an independent duty to sanitize the mugshot in order to protect the defendant's constitutional rights, even if this required her to override the defense's chosen strategy.[13] In *Commonwealth* v. *Day*, 42 Mass. App. Ct. 242, 246-247 (1997), the Appeals Court determined that defense counsel's strategic

---

[12]The Commonwealth claims that, because there was no dispute that the identification was made from a mugshot, defense counsel was not prevented from adequately cross-examining Morrissey in an attempt to show that awareness of the defendant's prior charge influenced Morrissey's identification. The Commonwealth ignores that the judge redacted information showing that the defendant had previously been arrested for a *firearms* charge. This information could have assisted the defense in demonstrating that the prior arrest bolstered Morrissey's confidence in his initial identification of the defendant, because both charges involved firearms.

[13]The judge did not sanitize all of the potentially prejudicial information from the mugshot before it was shown to the jury. See note 7, *supra.* Her partial redaction thus permitted the jury to receive some, but not all, of the information that was prejudicial to the defendant. See *Commonwealth* v. *Blaney*, 387 Mass. 628, 639 (1982) ("where . . . it is not reasonably possible to 'sanitize' completely photographs which must be introduced, the jury are best left with the impression that any photographs used to identify the

introduction in evidence of a flyer seen at a police station by two witnesses prior to their identification of the defendant was manifestly unreasonable where the flyer contained information that the defendant had a prior criminal record, was armed and dangerous, and was a gang member. The court stated that, regardless whether the defense or the prosecution had asked that the flyer be redacted, the judge abused her discretion by allowing the flyer in evidence without sanitizing it because of its highly prejudicial suggestion that the defendant "had a prior record and propensity for criminality." *Id.* at 247. However, neither *Commonwealth* v. *Day, supra,* nor any other case cited to us by the Commonwealth stands for the proposition that a trial judge's duty to protect the defendant's rights requires her to sanitize a mugshot containing evidence of prior crimes in all circumstances. See *Commonwealth* v. *Payton, supra* at 596 ("Any decision involving the introduction in evidence of mug shots depends on the circumstances present in the case"). Here, the circumstances surrounding the defendant's strategic decision to introduce the unsanitized version of the mugshot form included the fact that the firearms charge referenced on the form had been nolle prossed. In other words, this defendant had a means by which to offset the prejudice that would ordinarily flow from such information, such that it was reasonable for him to present the information.[14] If a defendant's strategy, reasonable in the circumstances, includes the introduction in evidence of material commonly excluded to protect the defendant, the judge should not, without more, make evidentiary rulings that effectively destroy the defendant's opportunity to advance his defense. See *Commonwealth* v. *Sheehan,* 435 Mass. 183, 190 (2001).

In this case the defendant's strategy relied on placing before the jury evidence that in other circumstances would have been struck as unduly prejudicial. See *Commonwealth* v. *Day, supra* at 247. There was thus every reason for the judge to be concerned that, if counsel's risky strategy failed, and the defendant were convicted by the jury, a subsequent claim of

---

*defendant* were taken after his arrest on the charges for which he is being tried").

[14]The admissibility of the fact of that nolle prosequi is discussed *infra.*

ineffective assistance of trial counsel would surely follow. The judge could have addressed these concerns in a colloquy with the defendant, outside the jury's presence, to establish whether the defendant recognized that he was forgoing a mainstay of the protections that ensure a fair trial, whether the defendant had fully consulted with and was in agreement with his counsel's strategy, and whether he was aware of and prepared to risk its possible consequences. For it is the defendant and his counsel, and not the judge, who must evaluate the risks of their trial strategy. See *Commonwealth* v. *Sheehan, supra* at 190 ("To the extent that the records were damaging to the defense . . . it was for defense counsel to decide whether their value outweighed their harm. Counsel was deprived of the ability to make that choice by the judge's ruling"). Where the record is clear that the defendant has knowingly agreed to the strategy advocated by his counsel, no later claim for ineffective assistance of counsel will prevail. See *Commonwealth* v. *White,* 409 Mass. 266, 277 (1991) (rejecting claim of ineffective counsel where "defense counsel made difficult strategic choices based on discussion with the defendant, and after reasonable consideration of the law and facts relating to the plausible options").

We also note that unless the defendant's strategy is "manifestly unreasonable," a claim for ineffective assistance of counsel will not succeed. See *Commonwealth* v. *Parker,* 420 Mass. 242, 248 n.7 (1995) ("A defense counsel's strategic decisions do not constitute ineffective assistance of counsel unless they are 'manifestly unreasonable' " [citations omitted]). Here, the defendant was represented by experienced counsel whose strategy of challenging the identification procedure as suggestive, especially where the firearms charge was nolle prossed, was legitimate. While the strategy certainly carried obvious risks to the defendant, this approach to a vigorous cross-examination of Morrissey's strong identification of the defendant was not manifestly unreasonable. See *Commonwealth* v. *Payton, supra* at 595-596, quoting *Commonwealth* v. *White, supra* at 272 ("In cases where tactical or strategic decisions of the defendant's [trial] counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful").

3. *Issues likely to arise at retrial.* Having determined that the defendant is entitled to a new trial, we discuss briefly the remaining issues that are likely to recur. First, defense counsel sought to introduce in evidence that the prior firearms charge that led to the inclusion of the defendant's photograph in the computer mugbook was nolle prossed because of mistaken identity. The nolle prosequi, filed October 30, 1997, states that "upon further investigation by the Billerica Police, it was learned that another individual, who used this defendant's name, was actually driving the car which is the subject matter of these complaints." Thus, the admission in evidence of the nolle prosequi raises no specter of collateral issues being tried before the jury. The defendant was earlier charged erroneously because his identity was wrongly appropriated by another individual who was apprehended by the police, and the defendant had not in fact been arrested. This information would surely negate any suggestion drawn from the unsanitized printed mugshot placed before the jury that this defendant had a propensity to commit crimes. Insofar as the nolle prosequi relates to the defendant's over-all strategy that the witness's subsequent identifications were bolstered by his knowledge of a prior firearms charge, the nolle prosequi of the prior firearms charge may be admitted to minimize the impact on the jury of information that is otherwise highly prejudicial.[15]

Second, defense counsel argues that it was error for the judge

---

[15]The Commonwealth argues that the defendant seeks to admit "reverse propensity evidence" and that such evidence is inadmissible. Propensity evidence, evidence of a defendant's prior bad acts, is not permitted because a jury may not convict an individual in the belief that he or she may have a propensity for criminal behavior. See *Commonwealth* v. *Elam*, 412 Mass. 583, 585 (1992). "Reverse propensity evidence," therefore, would be evidence of an accused's acquittal of prior charges used to suggest an accused's innocence of the current charges. The Commonwealth argues that this type of evidence is inadmissible because acquittal should not rest on the defendant's exoneration of previous charges. Defense counsel sought to introduce the prior charge and its disposition not as "reverse propensity evidence" but to "dispel the prejudice arising from the fact that the police had [the defendant's] mugshot prior to the identification in this case, i.e., the implication that he had a criminal record," and that the victim had been made aware of the prior charge for illegal possession of a firearm, the charge that had been nolle prossed. We have recognized the prejudice to the defendant that can attend the introduction of mugshots in evidence. See *Commonwealth* v. *Blaney*, 387 Mass. 628, 637-638 (1982). In this case, as we have explained, dispelling such prejudice goes to

not to instruct the jury on "honest mistake" at the close of evidence. Defense counsel never requested that instruction, nor did he raise the issue at the postcharge conference. In the absence of a request, a judge is not required to instruct the jury on "honest mistake." See *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983) ("Fairness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it *and when the defendant requests it*" [emphasis added]). At retrial, defense counsel is free to request such an instruction.

Third, the defendant claims that the judge should have suppressed the identifications of the defendant made by the two witnesses who placed the defendant near the crime scene at indefinite dates because each was shown only one photograph, that of the defendant, and this procedure was improperly suggestive. These witnesses were asked only if they recognized the defendant. Their identifications were not unnecessarily suggestive and need not be suppressed. See *Commonwealth* v. *Shipps*, 399 Mass. 820, 831 (1987) (holding identification not impermissibly suggestive where "officer simply asked whether [the employee] recognized either individual").

Fourth, we agree with the Appeals Court that the judge did not abuse her discretion by refusing to delay the trial to determine whether the VA records of one witness were discoverable by the defendant, where defense counsel had three months since being appointed to file a written motion to discover these records. See *Commonwealth* v. *Stephens*, 44 Mass. App. Ct. 940, 944 (1998) (no error in denying motion for production of privileged records made on first day of trial). Defense counsel may seek those records in a proper motion timely filed in connection with the retrial.

Fifth, the defendant argues that the admission in evidence of testimony that he had been seen near the VA methadone clinic, and the prosecution's subsequent use of that testimony in closing argument, was error. The defendant first brought to the attention of the jury the issue of methadone; the judge ruled that the witness could testify about his drug use and methadone

the essence of the defendant's defense of misidentification and is not, of itself, improper.

treatment, and the defendant did not object to the ruling or the testimony. There was no error.

Finally, the defendant objected to some of the prosecutor's statements in his closing argument. As a retrial is required, it will be for the defendant's trial counsel to make timely and specific objections to any statements made in closing argument that counsel considers unfair, and for the judge to rule on those objections in her sound discretion. *Commonwealth* v. *Carlino*, 429 Mass. 692, 697 (1999).

4. *Conclusion.* For the reasons stated above, the judgments are reversed, the verdicts set aside, and the cases are remanded to the Superior Court for a new trial.

*So ordered.*