Following a jury trial, defendant Vincent Tiscione was convicted of armed robbery, G. L. c. 265, § 17, and assault and battery, G. L. c. 265, § 13A(a ), from which he now appeals.[2] The jury could have found the following. Tiscione and codefendants Sean Michaels and Ryan Wilcox arranged a drug purchase from the victim, Norman Fanion.[3] They met at approximately 4:30 P.M. at Webster Square Plaza in Worcester. Fanion arrived first, and was driven by his girl friend, Emily Todd, who entered a nearby store upon arrival. The defendants arrived soon after in a car driven and owned by the defendant. Fanion got into the back right passenger's seat and gave the defendant some of the drugs, but demanded that the defendant pay him before he would hand over the rest. Michaels then put Fanion in a headlock and hit him with a wrench. Todd had made her way back and grabbed Michaels. Fanion yelled out her name but Wilcox put his hand in Fanion's mouth, preventing him from speaking further. Then the defendant put the car in reverse and drove behind the plaza, where the defendants took the rest of Fanion's drugs. Fanion was able to gain control of the wrench, but Wilcox pulled out a knife demanded that Fanion turn over his valuables. He turned over twenty-five dollars, and Wilcox pulled two gold chains from Fanion's neck. Michaels pushed him out of the car. Taking the defendant's claims in turn, we affirm the convictions.
Jurors' exposure to extraneous information. The defendant argues first that the jurors' exposure to extraneous prejudicial information warrants a new trial. After defense counsel's closing argument, the prosecutor and defense counsel got into a heated exchange at sidebar that, as the judge found, the jury likely overheard. It is reproduced in the margin.[4] After the jurors reached a verdict, but before it was announced, the judge agreed to conduct an individual voir dire of the jurors in the event that the jury returned a verdict of guilty. During the voir dire the judge asked the jurors, in substance, whether they heard the exchange and, if so, what they heard. Several jurors overheard snippets of the exchange, including one juror who claimed that he heard comments about defense counsel's "integrity" or "morals." The judge did not ask any of the jurors whether hearing the exchange would affect their ability to be fair and impartial. After the voir dire, defense counsel stated, "That's it, I think.... Thank you, your Honor."
"When there is a claim of extraneous influence on a jury, a two-step procedure is to be followed. First, the defendant 'bears the burden of demonstrating that the jury were in fact exposed to the extraneous matter. To meet this burden he may rely on juror testimony.' Commonwealth v. Fidler, 377 Mass. 192, 201 (1979). If the defendant meets this burden and the judge finds that extraneous matter came to the attention of the jury, 'the burden then shifts to the Commonwealth to show beyond a reasonable doubt that [the defendant] was not prejudiced by the extraneous matter.' Id."
Commonwealth v. Kincaid, 444 Mass. 381, 386 (2005).
The defendant argues that the heated conversation constitutes "extraneous matter" because it called into question defense counsel's integrity. Since he met his burden of proving that the jury were exposed to extraneous matter, and the judge did not make a finding as to the jurors' impartiality, the defendant continues, the Commonwealth failed to meet its burden of proving beyond a reasonable doubt that he was not prejudiced by the extraneous matter. He properly concedes that he did not preserve the claim of error and that our standard of review is for a substantial risk of a miscarriage of justice. See Commonwealth v. Fredette, 56 Mass. App. Ct. 253, 258-259 (2002).
We need not decide whether the judge erred because, even if he did, there was no such risk. "An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[ ]' the guilty verdict." Commonwealth v. Alphas, 430 Mass. 8, 13 (1999), quoting from Commonwealth v. Freeman, 352 Mass. 556, 564 [1967] ). In this case, we are so persuaded. Although jurors might have heard comments that tended to impugn the integrity of defense counsel, none of these comments were directly connected to the defendant, the crimes for which he was charged, or the evidence in the case.[5] And, while the judge did not give a curative instruction, he had earlier instructed the jury that, "[t]he law requires that we talk about [the admissibility of evidence] out of your hearing, because think about it. If it's going to be ruled improper or inadmissible, you shouldn't hear it." The jury thus were aware that sidebar conversations were not for their ears. The judge also instructed the jury that opening and closing statements are not evidence. In these circumstances, there was no substantial risk of a miscarriage of justice.
Limitation on defense counsel's cross-examination of Fanion. The Commonwealth's theory at trial was that the interaction between Fanion and the defendants was a drug deal gone wrong. Throughout most of the investigation, including in his testimony before the grand jury, Fanion had denied that the meeting was a prearranged drug deal. He changed this portion of his story the day before trial. At the time of trial, Fanion had pending charges, some of which related to the possession and distribution of marijuana, and was incarcerated in a house of correction. Defense counsel sought to question Fanion about his pending charges, current incarceration, and bail amount in order to demonstrate that Fanion had a motive to lie and to tailor his testimony to the Commonwealth's theory of the case, and that this was why Fanion changed this part of his story. The judge permitted defense counsel to question Fanion about his pending charges, including that he was arrested with $59,000 in cash on him, about the fact that he had recently changed his story, and about his reasons for doing so,[6] but not about his current incarceration or bail amount. The defendant argues that this decision violates his State and Federal confrontation rights. Because the issue was preserved, we review it for prejudicial error.
A judge has "broad latitude to direct the course of a trial, and this judicial discretion extends to limiting and otherwise controlling cross-examination." Commonwealth v. Vardinski, 438 Mass. 444, 451 (2003). "A judge may not restrict cross-examination of a material witness by foreclosing inquiry into a subject that could show bias or prejudice on the part of the witness." Commonwealth v. Aguiar, 400 Mass. 508, 513 (1987). However, "[a] judge does have discretion to limit cross-examination concerning possible bias when further questioning would be redundant." Commonwealth v. Bui, 419 Mass. 392, 400 (1995). If the judge's limitation of the defendant's confrontation rights was in error, it is nonprejudicial only if harmless beyond a reasonable doubt. See Vardinski, supra at 452. In determining whether the error was harmless, we consider "the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Commonwealth v. DiBenedetto, 414 Mass. 37, 40 (1992), quoting from Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).
We need not decide whether the judge's decision was in error because any error would have been harmless beyond a reasonable doubt. While Fanion's testimony was obviously important to the prosecution's case, that the armed robbery occurred during a drug deal -- the only portion of Fanion's story that changed, allegedly in order to curry favor with the authorities -- was a collateral issue. Had Fanion been consistent and asserted at trial that he was not engaged in drug dealing at the time of the crime, it would have been of no benefit to the defense. We note also that Fanion's testimony was cumulative of, and corroborated by, the testimony of Trisha Gain, the defendant's girl friend at the time of the incident. She testified that the defendant told her earlier that day that he planned to rob Fanion "[t]o get some weed." Further, the judge permitted the defendant to inquire into Fanion's bias by allowing cross-examination on Fanion's pending charges. The judge also specifically instructed the jury that they could consider the pending charges in deciding whether Fanion "had a motive for giving his statement at the time that he gave the statement or for his testimony today, and the nature of that testimony or statement." In these circumstances, had the judge erred, there would have been no prejudice.
Motion to dismiss the indictment. After learning that Fanion changed his story the day before trial, the defendant moved to dismiss the indictment, claiming that the indictment was defective because it was obtained due to Fanion's lie -- that at the time of the crime he was not engaged in a drug deal. In order to succeed on such a motion, the defendant must make a three-part showing to warrant dismissal of the indictment. First, "false or deceptive evidence" must have been presented to the grand jury. Commonwealth v. Mayfield, 398 Mass. 615, 621 (1986). Second, the evidence must have been presented "knowingly and for the purpose of obtaining an indictment" or with "reckless disregard of the truth." Ibid. Third, "the defendant must show that the presentation of the false or deceptive evidence probably influenced the grand jury's determination to hand up an indictment. This requires a showing not only that the evidence was material to the question of probable cause but that, on the entire grand jury record, the false or deceptive testimony probably made a difference." Id. at 621-622.
The defendant's claim -- which is somewhat at odds with his previous argument that the victim's testimony at trial that he was dealing drugs was harmful to the defendant -- fails on the third prong. That the robbery happened during a drug deal was a collateral issue and was likely irrelevant to the grand jury's decision to indict. It is no more lawful to rob and assault and batter a drug dealer than to do so to anybody else. Because the defendant has not shown that the testimony probably influenced the grand jury's decision to indict, the judge was correct to deny the motion to dismiss.
Admission of prior bad acts evidence. The defendant and Gain broke up in May of 2014, approximately seven months after the robbery. Gain told the grand jury in September of 2014 that she had wanted to end the relationship with the defendant around the time the robbery occurred. On cross-examination, defense counsel attempted to impeach this statement by reading to the jury romantic, sexually explicit letters that Gain wrote to the defendant between November of 2013 and March of 2014. On redirect, the prosecutor asked Gain, over defense counsel's objection, why she wanted to break up with the defendant and why she stayed with him despite wanting to break up. She testified that she wanted to break up with the defendant "[b]ecause of all the incidents happening, and [she] couldn't deal with it," including "[h]im going to jail and what he did to [her]." She also testified that she wanted to end the relationship because he "laid his hands on" her in September of 2013. Gain described the incident, testifying that he "just snapped one day and smashed his phone. And [she] said a stupid remark and then that's when he went after [her]." Finally, according to Gain, she did not feel safe ending the relationship.
The defendant argues that the judge abused his discretion by admitting this prior bad act evidence. Evidence of prior bad acts is ordinarily admissible for a purpose other than to show a defendant's propensity to commit the crimes charged, such as to rehabilitate a witness, see Commonwealth v. Hall, 66 Mass. App. Ct. 390, 394 (2006), but is inadmissible if "its probative value is outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). Here, defense counsel impeached Gain's general credibility by attempting to point out an inconsistency between her grand jury testimony -- that she wanted to break up with the defendant in September of 2013 -- and her behavior: that she did not do so until several months later. The challenged evidence explained why her testimony and her behavior were consistent: she did not break up with the defendant because he had been violent with her in the past and she was afraid of him. Although the prior bad acts evidence certainly was prejudicial to the defendant, defense counsel's questioning opened the door to the issue, and the prosecutor had no other way to rehabilitate Gain's general credibility. In these circumstances, we cannot say that the judge abused his discretion by admitting this evidence.[7]
Judgments affirmed.

He was acquitted of assault and battery with a dangerous weapon, G. L. c. 265, § 15A(b ).

Wilcox pleaded guilty before trial.

Prosecutor "This is a misstatement of the records."
Defense counsel "That is not true."
Clerk : "Shh."
Prosecutor : "It's completely true."
Judge : "Okay. You're going to have to argue that, because it went into evidence by stipulation without any --"
Prosecutor : "I guess maybe I should have assumed that [defense counsel] was being fully honest here in saying that this is --"
Defense counsel : "Don't say I'm not honest."
Judge : "Shh, shh."
Defense counsel : "That's an insult."
Prosecutor : "Well, I'm --"
Defense Counsel : "Don't say it."
Clerk : "Shh, shh."
Defense counsel : "It's not true."
Prosecutor : "Well, I'm insulted that you --"
Defense counsel : "Don't say it. You don't say that to me."
Judge : "Quiet."
Defense counsel : "Not in this courtroom. I'm the most honest individual in this courtroom."
Prosecutor : "It's a misstatement --"
Defense counsel : "That's clear."
Judge : "You may argue that."
Prosecutor : "It's a misstatement of the --"
Defense counsel : "It's not."
Judge : "You may argue that, [prosecutor]."
Prosecutor : "It's a direct misstatement."
Judge : "Okay. Thank you."

The heated exchange arose out of a dispute between counsel about the time zone of some telephone records that were introduced in evidence. Some of the jurors heard that this was the subject of the exchange, but the defendant does not argue that this constitutes extraneous matter.

The judge specifically told defense counsel he could question Fanion on whether he had changed his story in order to curry favor with prosecutors, but defense counsel never did so.

The judge denied the defendant's request for a contemporaneous limiting instruction but instructed the jury in his general charge the next day that they "may not take [prior bad acts] as a substitute for proof that the defendant committed the crimes charged, nor may you consider it as proof that the defendant has a criminal personality or bad character. But you may consider it solely on the limited purpose of the witness's credibility and motive." It is "preferable that the limiting instruction be given the same day as the testimony at issue." Commonwealth v. Linton, 456 Mass. 534, 551 n.12 (2010). See instruction 3.760 of the Criminal Model Jury Instructions for Use in the District (2009) (instruction should be given "at the time the evidence is admitted"). But "we do not find that the delay materially diminished the impact of the limiting instruction on the jury." Linton, supra at 551 n.12.