NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-893

COMMONWEALTH

vs.

RUDY D. RYAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of assault and battery.[1]  On appeal the defendant principally argues that the trial judge erred by prohibiting defense counsel from cross-examining a witness about her potential bias and motive to lie, in violation of the defendant's rights to confrontation and to present a defense.  We agree and thus vacate the conviction.

Background.  On March 5, 2020, Rebecca, Donna, and Theodore Barboza, all adult siblings,[2] and close family friend Kristen Kenney were at Rebecca's double-decker house in Brockton.  The

_____

[1] The jury acquitted the defendant of malicious damage to a motor vehicle.

[2] Because the siblings share a last name, we will refer to them by their first names.

defendant, Rebecca's son, lived on the first floor of the building. Rebecca and Donna were in the process of putting the defendant's possessions in trash bags because Rebecca was "trying to get [the defendant] out of the house." Later that night the defendant arrived at the property.

The witnesses differed on what happened next. Donna, the defendant's aunt, testified that she, Rebecca, and Theodore were at the front doorway when the defendant arrived looking angry.[3] The defendant and Rebecca argued "back and forth" about whether he could enter the building. The argument escalated, and the defendant "snatched [Theodore] off the porch" and threw him on top of Kenney's car. The defendant and Theodore rolled off the car and were "on the ground, tussling," when the defendant "smash[ed] [Theodore's] face into the concrete."

Kenney testified that she was with Theodore on the second floor of the building when they saw the defendant arrive looking "very angry." They ran downstairs, and, as Theodore opened the front door, the defendant immediately "grabbed Theodore by his neck and threw him off the stairs into [Kenney's] vehicle."

---

[3] It is unclear from Donna's testimony whether Kenney was also there.

According to Kenney the defendant did not argue beforehand with Rebecca because she "wasn't even in the area yet."[4]

The defendant testified in his own defense that, when he arrived, Theodore was blocking him from entering his apartment. The defendant remained calm while Theodore and Kenney argued with him about whether he could enter. During that exchange Theodore "shoved" the defendant. The defendant tried again to enter the apartment, but Theodore grabbed him by the lower waist and shoved him again, this time into Kenney's car. The defendant touched Theodore only "to push him off of [himself]."

Prior to trial defense counsel made an oral motion to introduce a certified docket from a criminal case showing that Theodore was on probation at the time of the incident and that his probation was due to end within a week. Defense counsel argued that the certified docket was relevant to show that Theodore's "family [was] protecting him" from a probation violation. The judge responded, "I don't think you need the record for that. You can ask questions relative to it, but I don't . . . know how you get [the record] in." When defense counsel clarified that she intended to "bring out" whether the witnesses were "aware [Theodore was] on probation," the prosecutor replied that "the docket alone" would be prejudicial

_____

[4] The Commonwealth summonsed Theodore and identified him on its potential witness list, but he did not appear at trial.

3

"if [defense counsel is] not able to elicit any awareness from the two witnesses from the Commonwealth."  The judge deferred ruling on the admissibility of the certified docket until she heard the testimony.

During her ensuing cross-examination of Donna, defense counsel asked, "And you are aware that [Theodore] was on probation at the time?"  The prosecutor objected without stating a reason.  Despite her earlier ruling that defense counsel could ask the question, the judge sustained the objection, struck the question, and instructed the jury to "not even consider what that answer might have been."

At the close of the Commonwealth's evidence, defense counsel sought again to admit the certified docket from Theodore's criminal case.  The prosecutor objected, this time on the ground "that there was no testimony elicited from any of the witnesses regarding the probation status, regarding any potential bias or motivations for the witnesses allegedly to have been . . . fabricating their stories to protect [Theodore] who was on probation."  The judge agreed with this reasoning, telling defense counsel, "[Y]ou didn't even lay a foundation . . . to show motive or bias or anything on behalf of any of the witnesses.  You also didn't ask any of the witnesses if they were aware that [Theodore] was . . . on probation at all."  When defense counsel pointed out that she did ask Donna that question

4

and that it was relevant to whether she had a motive to lie, the judge stated, "I think it's a complete stretch. And I think that wasn't developed or fleshed out at all." The judge then denied the motion to introduce the certified docket and instructed defense counsel "not to make any reference to it in . . . closing argument at all."

Discussion. The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee a criminal defendant's right to present a defense and to confront the witnesses against him through cross-examination. See Commonwealth v. Jacques, 494 Mass. 739, 745-746 (2024). Because these rights are "so closely linked" in this case, we consider "both under the more specific right to cross-examine." Commonwealth v. Vardinski, 438 Mass. 444, 450 (2003).

A judge has broad discretion "to direct the course of a trial," which "extends to limiting and otherwise controlling cross-examination." Vardinski, 438 Mass. at 451. But "that discretion must be exercised with great care" in criminal cases "when the basis for a defendant's proposed cross-examination is the bias or prejudice of the witness." Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 186 (2013). "If the defendant demonstrates that 'there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into the

5

subject.'"  Id., quoting Commonwealth v. Tam Bui, 419 Mass. 392, 400 (1995), cert. denied, 516 U.S. 861 (1995).

To determine whether the judge unreasonably limited cross-examination, "we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination" (citation omitted).  Jacques, 494 Mass. at 746.  Here, Donna was an eyewitness to the incident, and one of only two prosecution witnesses.  Her direct testimony was the strongest evidence that the defendant committed assault and battery, and the jury could have convicted the defendant based on her testimony alone.  It is thus plain that Donna's "testimony, and therefore [her] credibility," were material and critical to the Commonwealth's case.  Commonwealth v. Koulouris, 406 Mass. 281, 285 (1989).

On the other side of the balance, the restriction on cross-examination was substantial.  The judge prohibited all inquiry into the possibility that Donna had a motive to lie about the incident to protect her brother Theodore from being found in violation of his probation.  The judge's ruling "kept from the jury facts central to assessing [Donna's] credibility" and violated the defendant's right to cross-examine.  Jacques, 494 Mass. at 747.  See Koulouris, 406 Mass. at 285 ("Because bias is intimately related to credibility, a defendant has the right to cross-examine a prosecution witness in order to reveal bias");

Commonwealth v. Aguiar, 400 Mass. 508, 513 (1987) ("A defendant has the right to bring to a jury's attention any circumstance which may materially affect the testimony of an adverse witness which might lead the jury to find that the witness is under an influence to prevaricate" [quotations and citation omitted]). Cf. Davis v. Alaska, 415 U.S. 308, 317-318 (1974) ("The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of [prosecution witness's] vulnerable status as a probationer").

We are unpersuaded by the Commonwealth's contention that there was no constitutional violation because defense counsel was able to cross-examine Donna about other possible sources of bias, including that she had a close relationship with Theodore. That defense counsel was permitted cross-examination on other topics did not cure the error of barring all inquiry into whether Donna had a motive to protect her brother because of his probation status. See Davis, 415 U.S. at 318 (although some cross-examination on bias was permitted, it was not "adequate to develop the issue of bias properly to the jury").

We are likewise unpersuaded by the Commonwealth's contention that the restriction on cross-examination was proper because "Donna's knowledge of [Theodore's] probation and the possible effect of that knowledge was too tenuous in nature." As an initial matter, the record shows that the judge did not

rely on this rationale in her pretrial ruling.  To the contrary, the judge told defense counsel that she could "ask questions relative to" Theodore's probation status; the judge did not say that the theory was tenuous and did not require defense counsel (or give her the opportunity) to make a "plausible showing that the circumstances existed on which the alleged bias [was] based."  Tam Bui, 419 Mass. at 401.  It is unclear why the judge then sustained the prosecutor's objection when defense counsel tried to ask Donna the question.  In any event, we agree with the defendant that it is plausible that Donna would have known that her brother, with whom she was close, had a criminal record and was on probation and that this might give her a motive to lie.  Cf. Commonwealth v. Henson, 394 Mass. 584, 587 (1985) ("The possibility that a prosecution witness is hoping for favorable treatment on a pending criminal charge is sufficient to justify inquiry concerning bias, even if the Commonwealth has offered no inducements to the witness").  The defendant therefore had the right to explore this topic through cross-examination.  See Aguiar, 400 Mass. at 514; Kindell, 84 Mass. App. Ct. at 187.

Because the error was preserved and is of constitutional dimension, the Commonwealth "bears the burden of establishing that the error was harmless."  Vardinski, 438 Mass. at 452.  In deciding this question, we consider "the importance of the

8

witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Jacques, 494 Mass. at 748, quoting Vardinski, supra. Here, as discussed above, Donna's testimony was critical to the Commonwealth's case. Moreover, although Kenney corroborated Donna's testimony that the defendant was the aggressor, Kenney did not see what happened after the defendant and Theodore rolled off the car, and her testimony differed from Donna's in material respects, including whether the fight was preceded by an argument between the defendant and his mother. See Jacques, supra (error in restricting cross-examination of victim not harmless even though another witness's "independent testimony bolstered the Commonwealth's case," where that "testimony did not corroborate any of the specific details of the alleged abuse"). The jury also acquitted the defendant on one of the charges, suggesting that "the evidence was not overwhelming." Id. at 749. For these reasons we conclude that the restriction on cross-examination was not harmless and that

9

the defendant is entitled to a new trial.[5]

_Judgment vacated_.

_Verdict set aside_.

By the Court (Blake, C.J.,
  Shin & Hand, JJ.[6]),

Clerk

Entered:  February 19, 2025.

---

[5] We need not resolve the remaining issues raised by the defendant because they are unlikely to arise again, at least in their current form, at any retrial.  We note briefly that the record does not support the defendant's assertion that the judge prevented him from testifying about his injured back.  The judge struck some testimony that was nonresponsive, irrelevant, or hearsay, but otherwise appropriately allowed the defendant to testify about his injury.

[6] The panelists are listed in order of seniority.