## COMMONWEALTH *VS.* GINA KINDELL.

No. 12-P-987.

Suffolk. May 9, 2013. - August 21, 2013.

Present: HANLON, BROWN, & AGNES, JJ.

*Evidence,* Bias, Cross-examination. *Witness,* Bias, Cross-examination. *Constitutional Law,* Harmless error. *Error, Harmless. Practice, Criminal,* Harmless error.

At a criminal trial, the judge erred in limiting, during cross-examination of the victim, inquiry by defense counsel into the preexisting and hostile relationship between the defendant and the victim in an effort to establish the victim's motive to fabricate the charge against the defendant, where counsel made clear the basis for her proposed cross-examination of the victim and the reason it was directly relevant to victim's credibility, i.e., not only was the evidence relevant to the credibility of the victim, who was the only witness, it was the entire defense [186-187]; and where, given that the evidence the defendant sought to introduce could have shown bias or prejudice on the part of the victim in relation to the defendant and that there was no reason to believe that the proposed cross-examination would confuse the issues or mislead the jury, the defendant had a right to have the whole relationship presented to the jury [187-189]; further, it could not be said that the error was harmless, where the defense was based entirely on the contention that the victim was not credible and the Commonwealth's case depended entirely on persuading the jury to believe that the opposite was true, and where the matter defense counsel wished to explore had not already been brought to the jury's attention in sufficient detail [189-190].

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on May 17, 2011.

The case was tried before *Annette Forde,* J.

*Anne Ravaud Kealy* for the defendant.

*Cailin M. Campbell,* Assistant District Attorney (*Spencer Lord,* Assistant District Attorney, with her) for the Commonwealth.

AGNES, J. The defendant, Gina Kindell, was found guilty of the lesser included offense of assault and battery after a trial by

jury on a complaint charging her with assault and battery by
means of a dangerous weapon. She raises several issues on
appeal, but only one requires discussion. For the reasons that
follow, there must be a new trial because the defendant was
deprived of the right to cross-examine the Commonwealth's
only witness as to bias.

*Background.* The Commonwealth's case was based on the
testimony of a single witness, James Hubbard, whose stepson,
Steven Kindell, was married to the defendant. The defendant
did not testify. In brief, the jury heard Hubbard testify that on
the evening of April 21, 2011, he was in a pizza shop across the
street from his apartment. He did not see the defendant enter
the shop, as his back was toward the entrance. He testified that,
without any provocation on his part, the defendant came up to
him and began to curse and yell at him. The shop owner asked
them to leave. According to Hubbard, when the pair went outside,
the defendant put her purse against a nearby fence and, without
warning, punched him in the face. He responded by hitting her
with an open hand and knocking her to the ground. She got up
and lunged at him. He felt something sharp, and when he touched
his forearm through his winter coat he felt and saw blood. Hub-
bard also testified that he saw an ice pick in the defendant's
hand. He took out his cellular telephone to call the police, but it
fell to the ground. He testified that as he tried to pick it up, the
defendant struck him five or six more times with the ice pick.
When Hubbard said he was going to call the police, the defend-
ant ran away. Hubbard was taken to the hospital where, accord-
ing to the medical records introduced in evidence, he was treated
for two "small pin point superficial puncture [wounds]," one on
each forearm. The following day, the parties obtained mutual
restraining orders. The defendant was not arrested at the scene.
The criminal complaint against the defendant was not sought
until May 17, 2011, about three weeks later.

During the consideration of pretrial motions in limine, both the
prosecutor and defense counsel made the court aware of a pre-
existing and hostile relationship between the defendant and the
alleged victim. At trial, the defense made an offer of proof (the
adequacy of which is not challenged by the Commonwealth), in
part indicating the following. At the time of the alleged offense,

the defendant's husband, Steven Kindell, who is Hubbard's stepson, was serving a term of incarceration as a result of a domestic violence incident in which he assaulted the defendant. The defendant had testified in at least one proceeding related to the assault.[1] Also as a result of the domestic violence, the defendant had two active restraining orders against Steven Kindell at the time of the offense alleged in the case at bar.

While Hubbard was on the stand during the defendant's trial, defense counsel attempted to elicit from him that Steven Kindell was in jail in April of 2011, when the defendant allegedly attacked Hubbard. The judge sustained the Commonwealth's objection. During an ensuing conversation between the attorneys and the judge, without the jury present, defense counsel informed the judge that her client had made her aware that prior to the date of the alleged offense, Hubbard had threatened the defendant in an effort to persuade her not to testify against his stepson in the domestic violence case. Defense counsel told the judge that Hubbard had told the defendant that if she allowed his stepson to remain in jail, "he'd make sure she wound up in jail." Defense counsel informed the judge that she wanted to inquire of Hubbard about this and the tumultuous relationship between the defendant and his stepson in an effort to establish Hubbard's motive to fabricate the charge against the defendant. She proposed to use a certified docket from Steven Kindell's conviction and the restraining orders against him to refresh Hubbard's recollection were he to deny the history between the defendant and her husband.

The judge ruled that defense counsel would not be permitted to question Hubbard about the restraining orders, the history between his stepson and the defendant, or about the fact that his stepson was incarcerated at the time of the alleged offense. Defense counsel explained at length her reasoning that, apart from the restraining orders and the use of any prior criminal convictions, she should be permitted to explore with Hubbard

---

[1]Although the facts relating to Steven Kindell's incarceration are not entirely clear from the record before us, it appears that the defendant testified against her husband in at least one proceeding and refused to testify in another by asserting her spousal privilege. See Mass. G. Evid. § 504(a) (2013 ed.). After the defendant's testimony, Steven Kindell's probation in a preexisting case in the District Court was revoked.

his awareness of the relationship between the defendant and Hubbard's stepson and the defendant's role in the stepson's incarceration, in an effort to establish that Hubbard had a motive to lie.[2] The judge ruled that the probative value of such evidence was substantially outweighed by its potential for prejudice and that such evidence would confuse the jury. Ultimately, the judge also ruled that it was not relevant. As a result, the only evidence that the jury heard about the relationship between the alleged victim and the defendant was a brief statement by Hubbard on direct that they had had "disagreements."

*Discussion.* 1. *Cross-examination as to bias.* A judge has discretion to control the scope of cross-examination. See Mass. G. Evid. § 611(a), (b)(1) (2013 ed.). However, in a criminal case, that discretion must be exercised with great care when the basis for a defendant's proposed cross-examination is the bias or prejudice of the witness. See *id.* § 611(b)(2). "A criminal defendant has the constitutional right[3] to cross-examine a prosecution witness to show bias." *Commonwealth* v. *Noeun Sok,* 439 Mass. 428, 435 (2003). If the defendant demonstrates that "there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into the subject." *Commonwealth* v. *Tam Bui,* 419 Mass. 392, 400, cert. denied, 516

_____

[2]Specifically, defense counsel told the judge,

"[M]ost respectfully . . . by not allowing me to question regarding Mr. Hubbard's motive to lie . . . you are denying the defendant an effective defense of the charge[] in this case, and you're denying the opportunity to impeach a potentially lying witness. . . . Mr. Kindell has everything to do with this case because the only reason this case exists is because [the defendant] testified against Mr. Kindell. And Mr. Hubbard promised her that if she testified against [Mr. Kindell] and he wound up in jail, [Mr. Hubbard] would make sure she also wound up in jail. That is why it is connected. . . . It relates to this case because the only reason — it is our defense — the only reason this case exists is . . . as a revenge tactic against [the defendant] by Mr. Hubbard. He promised her he'd teach[] her a lesson and that's exactly what he's doing. And to not be able to go into that history at all, and to be completely precluded from going into — or foreclosed from going into that history, you're denying her her defense in this case."

[3]The right sounds under the Constitutions of both Massachusetts and the United States. *Commonwealth* v. *Tam Bui,* 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995).

U.S. 861 (1995).[4] Cross-examination as to bias is of vital importance because the weight that the jury give to the testimony of the witness may depend entirely on their belief that the witness has no motive to lie. See *Day* v. *Stickney*, 14 Allen 255, 258 (1867). When the basis for the cross-examination of a witness with respect to bias appears to be tenuous or speculative, the judge may require a party to make a "plausible showing that the circumstances existed on which the alleged bias is based." *Commonwealth* v. *Tam Bui, supra* at 401. If a plausible basis is not demonstrated, or the relevance of the proposed evidence is of no more than marginal value to the party conducting the cross-examination, the judge has discretion to exclude the evidence. See *id.* at 401-402; *Commonwealth* v. *Kartell*, 58 Mass. App. Ct. 428, 433 n.2 (2003), quoting from *Crane* v. *Kentucky*, 476 U.S. 683, 689 (1986).[5] Compare *Kenney* v. *Head*, 670 F.3d 354, 359 (1st Cir. 2012). In the present case, defense counsel made clear the basis for her proposed cross-examination of the Commonwealth's witness, and the reason why it was directly relevant to the witness's credibility. See *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981). In fact, in this case, the evidence was not only relevant to the credibility of the only witness, it was the entire defense.

2. *Weighing probative value against unfair prejudice, confusion of issues, misleadingness to jury.* In performing what is often referred to as the § 403 balancing test, see Mass. G. Evid. § 403 (2013 ed.),[6] the measure of prejudice is not whether the evidence simply is adverse to the party against whom it is

---

[4]"Bias is a term used . . . to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States* v. *Abel*, 469 U.S. 45, 52 (1984).

[5]See also *Commonwealth* v. *Hall*, 50 Mass. App. Ct. 208, 213 n.7 (2000), quoting from Liacos, Massachusetts Evidence § 6.9, at 299-300 (7th ed. 1999) ("Because bias, prejudice, and motive to lie are not considered collateral matters, they may be demonstrated by extrinsic proof as well as on cross-examination. There is no requirement that the opponent cross-examine on the matter as a foundation prior to offering extrinsic evidence").

[6]"Relevant evidence may be excluded if its probative value is substantially

offered. *Dollar* v. *Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977), cert. denied, 435 U.S. 996 (1978). "By design, all evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided." *United States* v. *Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989). "Evidence is unfairly prejudicial only if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' It is unfairly prejudicial if it 'appeals to the jury's sympathies, arouses [their] sense of horror, provokes [their] instinct to punish,' or otherwise 'may cause a jury to base [their] decision on something other than the established propositions in the case.' " *Carter* v. *Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (citations omitted). Compare *Commonwealth* v. *Avalos*, 454 Mass. 1, 7 (2009) (judge has discretion to limit cross-examination concerning possible bias when further questioning would be redundant, when it would involve only collateral matters, when it would be too speculative, or when it is simply a proxy for proving the bad character of a witness).

In the present case, the judge regarded evidence of Hubbard's feelings toward his stepson and the defendant, including his knowledge that his stepson was incarcerated as a result of the defendant's testimony, either as having no probative value, or only minimal value because it would not shed any light on the facts in dispute at trial, namely, the alleged attack by the defendant against Hubbard on April 21, 2011. However, the credibility of a witness and whether a witness's testimony may be influenced by a bias for or against a party are relevant in every case and are proper subjects for cross-examination. See *Commonwealth* v. *Gagnon*, 408 Mass. 185, 192 (1990). See also *Commonwealth* v. *Buzzell*, 79 Mass. App. Ct. 460, 462 (2011). "[E]vidence of bias is almost never a collateral matter." *Commonwealth* v. *LaVelle*, 414 Mass. 146, 153 (1993).[7] Furthermore, there is no

---

outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, being unnecessarily time consuming, or needless presentation of cumulative evidence."

[7] Evidence of bias is collateral where the witness does not change his story after becoming susceptible to official pressure. See *Commonwealth* v. *Haywood*, 377 Mass. 755, 762-763 (1979); *Commonwealth* v. *LaVelle*, 414 Mass. at 154; *Commonwealth* v. *Martinez*, 431 Mass. 168, 180-181 (2000).

reason to believe that the proposed cross-examination would confuse the issues or mislead the jury.

The effect of the judge's ruling was to foreclose all inquiry by defense counsel on cross-examination of Hubbard about his understanding of and feelings about the relationship between his stepson and the defendant which, in the circumstances, could have revealed evidence of his bias and prejudice against the defendant. As a result of such cross-examination, the jury might have received a significantly different impression of Hubbard's credibility. "The evidence that the defendant sought to introduce could show a bias or prejudice on the part of the witness in relation to the defendant. The defendant had a right to have the whole relationship presented to the jury."[8] *Commonwealth* v. *Aguiar*, 400 Mass. 508, 514 (1987). See *Olden* v. *Kentucky*, 488 U.S. 227, 231-232 (1988); *United States* v. *Lynn*, 856 F.2d 430, 433-434 (1st Cir. 1988).

3. *Harmless error analysis.* "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis* v. *Alaska*, 415 U.S. 308, 316-317 (1974). When the error is preserved, as in this case, it is subject to harmless error analysis. *Olden* v. *Kentucky*, *supra* at 232-233. In assessing whether such an error was harmless, we must examine several factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 684 (1986). See *Commonwealth* v. *Morales*, 76 Mass. App. Ct. 663, 665-667 (2010) (canvassing the Massachusetts cases on harmless error and concluding that "in determining whether a constitutional error was harmless, we ask whether the record establishes beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" [quotations and citations omitted]).

---

[8] In view of our result, it is unnecessary to consider other rulings by the judge which limited cross-examination of the alleged victim, including on the subject of the mutual restraining orders obtained by the defendant and Hubbard following the alleged attack.

In this case, the defense was based entirely on the contention that Hubbard was not credible and the Commonwealth's case depended entirely on persuading the jury to believe the opposite was true. This is not a case in which the matter that defense counsel wished to explore had already been brought to the attention of the jury in sufficient detail. See *Commonwealth* v. *Traylor*, 43 Mass. App. Ct. 239, 242-243 (1997). The rulings that restricted cross-examination "deprived the defendant of an opportunity to present sufficient information to the jury for [them] to make a discriminating appraisal of the complainant's motive to lie." *Commonwealth* v. *Morin*, 52 Mass. App. Ct. 780, 785 (2001), and cases cited. "We cannot say that this information would not have had a material impact on the jury's decision." *Ibid.*

*Judgment reversed.*

*Verdict set aside.*