Following a jury trial in the District Court, the defendant, Paul A. Imbriano, was convicted of assault by means of a dangerous weapon on a person over the age of sixty, in violation of G. L. c. 265, § 15B. On appeal, the defendant claims that the judge's limitation on defense counsel's cross-examination of the victim, Richard Frechette, concerning a prior incident between Frechette and the defendant's son, improperly infringed upon his ability to present a defense. We affirm.
Background. Based upon the evidence at trial, the jury could have found the following facts. In the early morning of September 8, 2014, Frechette, who worked as a building manager, was monitoring his employer's parking lot to prevent unauthorized persons, including students attending the nearby University of Massachusetts (UMass) at Lowell, from using the lot. He was driving home around 9:00 A.M. , when he saw a Cadillac sport utility vehicle (SUV) behind him. The driver of the SUV, later identified as the defendant, signaled for Frechette to stop by flashing his lights and honking his horn. Frechette pulled to the side of the road, and the SUV stopped behind him. Both Frechette and the defendant alighted from their vehicles and approached each other. The defendant, who was "very agitated," swore at Frechette, and told Frechette to "never mess with his kid again." The defendant then threatened to "kick [Frechette's] ass," opened his coat, pointed to a revolver that was tucked into his waistband and said, "[Y]ou see this? I ought to put a couple of holes in your head." Frechette became fearful after seeing the black handle of a revolver, and he called the police. The defendant began to drive away, brushing Frechette with his car in the process.[2] Frechette responded by punching the SUV.
Officer Raymond Royer responded to the scene within a few minutes. He observed Frechette, the defendant, and the defendant's wife on the sidewalk arguing.[3] After speaking with Frechette, Royer asked the defendant if he had a weapon. The defendant told Royer that he had a license to carry a firearm and that there was a gun under the front seat of the SUV. Royer then retrieved a loaded, black, nine-millimeter handgun in a black leather belt holster. Royer advised the defendant of his Miranda rights and conducted a patfrisk, during which he found a .45 caliber magazine in the defendant's pocket. Royer observed that the defendant's belt was undone and his shirt was untucked. The defendant agreed to answer Royer's questions and admitted that he had stopped and threatened Frechette "because [he] was angry." He also told Royer that he was upset over "something [that had] happened" between Frechette and his son.
The defendant and his wife testified at trial and presented a different version of events. They claimed that they drove approximately forty-five minutes from their home in Rowley after receiving a telephone call from their son, who was a student at UMass Lowell. Their purpose was to find their son's car and to determine what had happened between their son and Frechette. The defendant testified that he wanted to ascertain whether Frechette was a security guard and whether his son had done anything wrong. Apparently, the son had provided his parents with the license plate number of Frechette's truck. Upon arriving in Lowell, the defendant and his wife saw the truck and then signaled to Frechette to stop. According to the defendant and his wife, Frechette was angry and aggressive. Therefore, they testified, they decided to go to the campus police. As they were driving away, Frechette punched their SUV with his fist. The defendant denied having a firearm on his person and claimed that he neither showed a firearm to Frechette nor threatened him.
Discussion. Prior to trial, the Commonwealth filed a motion in limine seeking to exclude evidence of Frechette's allegedly violent conduct toward the defendant's son. The defendant also filed a motion in limine, seeking permission to introduce evidence regarding criminal charges pending against Frechette.[4] After hearing arguments, the judge ruled that the defendant's son could not testify about the encounter between himself and Frechette, and that neither the defendant nor his wife could testify to their communications with the son about Frechette's alleged conduct. However, the judge ruled, Frechette could be questioned about the pending charges in order to show his bias in favor of the Commonwealth. In accordance with the judge's ruling, defense counsel asked Frechette about the pending charges. Frechette responded that "[t]he alleged charges are assault and battery with a dangerous weapon; to wit an automobile, and allegedly threatening to slash somebody's tires." On redirect examination, Frechette testified that he had not "had any conversations with the District Attorney's office about cooperating in exchange for a favorable outcome in that case," and that he was not "expecting a more favorable outcome for testifying today."
The defendant contends that the judge violated his right to confront Frechette by limiting cross-examination and, in particular, by precluding counsel from soliciting testimony that identified the defendant's son as the victim of the charges pending against Frechette. We disagree.
"If, on the facts, there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into the subject." Commonwealth v. Ahart, 464 Mass. 437, 441 (2013), quoting from Commonwealth v. Tam Bui, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995). Here, contrary to the defendant's assertion, the judge's ruling did not amount to a "blanket prohibition" into the question of bias. Defense counsel questioned Frechette about the fact that he had been charged with assault and battery by means of a dangerous weapon and threatening to commit a crime; counsel therefore was able to demonstrate that Frechette had a motive to fabricate his version of events and to cooperate with the police. Moreover, on numerous occasions, defense counsel solicited testimony that served to alert the jury to the fact that there had been some sort of altercation between Frechette and the defendant's son.[5] Unlike the case of Commonwealth v. Kindell, 84 Mass. App. Ct. 183 (2013), upon which the defendant relies, "the matter that counsel wished to explore [in this case] had already been brought to the attention of the jury in sufficient detail." Id. at 190. The jury were aware that the defendant's motive in driving to Lowell and approaching Frechette was an earlier encounter between Frechette and the son, and, absent any evidence that Frechette changed his story after having been charged, any further evidence on the issue would have been collateral. See ids="4163546" index="5" url="https://cite.case.law/mass-app-ct/84/183/">id. at 188 n.7. "[T]here can be no reversible error in excluding collateral matters when the exclusion could not have resulted in prejudice to the defendant," Commonwealth v. LaVelle, 414 Mass. 146, 152 n.5 (1993), and "the judge did not abuse her discretion in precluding" further inquiry into the earlier incident. Commonwealth v. McGhee, 472 Mass. 405, 425 (2015).
Judgment affirmed.

The defendant was acquitted of assaulting a person over the age of sixty with his SUV.

The defendant's wife was a passenger in the SUV.

On November 23, 2015, a criminal complaint issued from Concord District Court charging Frechette with assault by means of a dangerous weapon and threatening to commit a crime. The offense allegedly occurred on September 8, 2014, and the alleged victim in the case is the defendant's son.

Indeed, the defendant's wife testified that she stated to Frechette, at some point during their altercation, "You assaulted my son."