NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-997

COMMONWEALTH

vs.

WARNER DONALDSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On January 26, 2024, after a jury trial, the defendant was convicted of armed and masked robbery in violation of G. L. c. 265, § 17, assault by means of a dangerous weapon in violation of G. L. c. 265, § 15B (b), and larceny under $1,200 in violation of G. L. c. 266, § 30 (1).[1]  Following his conviction, the defendant brought this appeal, contending that (1) the defendant's motion to suppress the search warrant for his home should have been granted, (2) the defendant's motion to dismiss the indictments should have been granted, (3) the

---

[1] The defendant was sentenced to seventeen to twenty-three years in State prison for count one, with a five-to-seven-year sentence for count two and a one-year sentence for count three, each to run concurrently with count one.

admission of canine tracking and deoxyribonucleic acid (DNA) evidence was error, (4) the prosecutor deliberately misled the jury during closing arguments, and (5) the trial judge erred in denying defense counsel's motion to withdraw and the defendant received ineffective assistance of counsel as a result of the denial. We affirm and address each claim in turn.

Background. 1. The robbery and investigation. We summarize the facts as found by the motion judge, supplemented with "evidence from the record that is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony" (citation omitted). Commonwealth v. Garner, 490 Mass. 90, 94 (2022). On February 28, 2021, shortly after 8 P.M., a person wearing all black clothing and a black and white face mask robbed the Kwik Pik convenience store. After the robbery, the cashier notified the manager, who was present but in the store's basement office at the time of the robbery. The manager then waited fifteen minutes before calling the Springfield police. The manager then reviewed security camera footage of the robbery until police arrived.

Police arrived at the store at 8:42 P.M., and an officer interviewed the cashier, who said that the robber wore a black hoodie, black pants, black sneakers, latex gloves, and wore a black and white mask covering everything except his eyes. Detective Adam Provost interviewed the manager, who said, "I was

2

not in here," when the robbery occurred, but that he recognized the robber based on the way he walked, his mannerisms, and the sound of his voice. The manager also showed police the store's silent security recordings of the robbery and of previous days when the person he believed to be the suspect came to the store. He also drove to the defendant's nearby address to confirm where the person he suspected to be the robber lived while the officers waited in the store. A police canine independently tracked a route from the store to the same address where the manager suspected the robber lived.[2]

The manager, but not the cashier, was taken back to the police station where he was interviewed on camera and shown a photograph array by Sergeant Eric Podgurski. The interview was attended by Detective Provost. The manager immediately picked out a picture of the defendant as the person who robbed the store. During the interview, Podgurski spoke to the manager as though he was the one who had been robbed and the manager seemingly answered questions as though he had been present in

_____

[2] The grand jury heard testimony that Officer John Ruyffelaert, the canine police officer supervising the police dog, was not aware of the information provided by the manager and the clerk. The grand jury also viewed police body camera video footage. We note that the motion judge, in denying the defendant's motion to dismiss, agreed with the defendant that the video recording "does not show the dog tracking directly to" the address. At trial, the video recording showed the dog go off alert and begin chasing a rabbit at the address.

3

the room during the robbery.[3]  Following the interview, the police applied for a search warrant for the defendant's home. The police subsequently searched the defendant's home, recovering black pants, a black jacket, black sneakers, black gloves, a black and white mask, and two BB guns.  The items were submitted for DNA analysis.

A grand jury indicted the defendant on July 6, 2021.  After the defendant unsuccessfully moved to suppress evidence obtained from the search of his home, and unsuccessfully moved to dismiss the indictments, the matter proceeded to trial.

2.  The trial.  On the first day of trial, defense counsel moved to withdraw from representing the defendant.[4]  The trial judge denied the motion.  At trial, the prosecution's evidence included, inter alia, the canine tracking evidence and DNA evidence indicating that the defendant's DNA was found inside the black and white mask seized from the defendant's home.

---

[3] For example, when Podgurski stated, "You're the manager at the Kwik Pik on Boston Road.  This male went to your store this evening, had a handgun to you," the manager answered, "Yeah." Podgurski then asked, "And what did he say to you?"  The manager answered, "Give him all the money."

[4] The attorney stated that she was unable to control the defendant's outbursts, the defendant was not listening to her when she talked to him, and the defendant was swearing at her. Earlier during voir dire, the defendant held up a piece of paper that said, "they are liars," in front of the potential jurors.

Defense counsel did not object to the admission of either the canine or DNA evidence.

The defendant testified in his own defense and during his cross-examination, he testified that he would not have "robb[ed] a store for $800 when [he] was making 2,000 every two weeks." When prompted to repeat how much the store had been robbed for, the defendant explained, "You all say it was $800." During closing arguments, the prosecutor highlighted this exchange and argued that she "[did]n't believe it was" a coincidence that the defendant knew the amount stolen to be $800, implying that the defendant knew the amount because he had in fact stolen the money. The prosecutor also noted the strength of the DNA evidence connecting the inside of the mask to the defendant. Again, there was no objection from defense counsel. The jury found the defendant guilty of all charges.

Discussion. 1. Motion to suppress. "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error. . ." (citation omitted). Commonwealth v. Daveiga, 489 Mass. 342, 346 (2022). "We review independently the application of constitutional principles to the facts found" (citation omitted). Id. In a Franks hearing, such as the one held here to determine whether suppression was warranted due to allegedly false statements in the search warrant application, "the defendant must show by a

preponderance of the evidence that the false statement or misimpression created by an omission was made either intentionally or with reckless disregard for the truth." Commonwealth v. Long, 454 Mass. 542, 552 (2009). See Franks v. Delaware, 438 U.S. 154, 155-156 (1978). However, when probable cause relies on misstatements that are the product of "good faith but negligent conduct," the search warrant will not be suppressed. See Commonwealth v. Nine Hundred & Ninety-Two Dollars, 383 Mass. 764, 771-772 (1981).

Here, the defendant asserts that his motion to suppress evidence recovered from the search of his home should have been granted on the ground that the search warrant affidavit intentionally or recklessly contained false statements, and those statements were necessary to the finding of probable cause. Namely, the defendant notes that the search warrant affidavit states that the manager personally witnessed the robbery and heard and recognized the robber's voice, even though the manager was not present for the robbery itself and could not have identified the robber's voice from the store's silent security tapes. We are not persuaded.

The motion judge concluded that, "Although the police work done in this investigation was less than stellar, there is no evidence that any officer, including the affiant, knowingly or intentionally made false statements. Nor does the evidence

6

prove the affiant's reckless disregard for the truth."  We agree.  The motion judge's findings describe multiple reasons for the police to reasonably believe the manager's account.  The manager was present at the store when the police arrived shortly after the robbery and his account corroborated the account of the cashier, who was present for the robbery.  When police presented the manager with a photograph array, the manager immediately picked the picture of the defendant.  The manager showed the police the store's surveillance footage, which further corroborated the cashier's and manager's accounts of what happened during the robbery.  The manager also drove to the defendant's home to confirm where the man he believed was responsible for the robbery lived, and a canine unit independently tracked to the same address.

While the store's surveillance video recording is silent and does not show the manager during the robbery, the police watched the video recording only to observe the robber exiting the store.  At this juncture, it was reasonable that the police would be focused on the appearance of the robber as opposed to scanning the surveillance video recording for internal contradictions in the manager's account.  Additionally, while the manager's answers during his interview with Podgurski contradicted his earlier statement that "[he] was not in here," made when the police first questioned him at the store, the

7

manager had multiple opportunities to alert the police to their apparent misapprehension that the manager was present, and did not do so.[5]  At this point, the police had little reason to believe that the manager was not answering their questions accurately during the interview.

Given the corroborating circumstances supporting the manager's account, we agree with the motion judge that the defendant failed to prove by a preponderance of the evidence that the police recklessly or intentionally included false statements in the search warrant affidavit, and that the police were at most negligent in preparing the affidavit.  See Long, 454 Mass at 552.  Because the false statements in the affidavit are adequately attributable to good faith errors, we cannot conclude that the motion judge erred in denying the motion to suppress.  See Nine Hundred & Ninety-Two Dollars, 383 Mass. at 771-772.

2.  Grand jury motion to dismiss.  In order to obtain the dismissal of his indictments due to the alleged impairment of the grand jury proceedings, the defendant had to prove three elements:  "(1) the Commonwealth knowingly or recklessly

---

[5] The motion judge also noted that "the court at times had difficulty understanding what the manager said," a factor that possibly contributed to the manager's reluctance to correct police on their misapprehension.

8

presented false or deceptive evidence to the grand jury; (2) the evidence was presented for the purpose of obtaining an indictment; and (3) the evidence probably influenced the grand jury's decision to indict."  Commonwealth v. Silva, 455 Mass. 503, 509 (2009).  When a judge decides a motion to dismiss for impairment of the grand jury following a nonevidentiary hearing, our review is de novo.  See Commonwealth v. Barlow-Tucker, 493 Mass 197, 204 (2024).

To be sure, the Commonwealth presented misleading evidence to the grand jury by presenting the manager's statements that he recognized the robber from the surveillance video recording based on the sound of his voice, and by relating an account that the manager recognized the robber's voice during the robbery and came out from the back of the store to see the robber personally.

As discussed supra, however, the false statements were not included recklessly or intentionally in the search warrant. Likewise, the bases for asserting that the false statements were recklessly or intentionally presented to the grand jury are largely the same as those for believing the search warrant recklessly or intentionally contained false statements.  We therefore agree with the motion judge that the Commonwealth did not recklessly or knowingly present a false version of events to the grand jury.  See Silva, 455 Mass. at 509 (dismissal of

9

indictment based on impairment requires finding Commonwealth knowingly or recklessly presented false statements).  We also agree with the motion judge that it is unlikely that the Commonwealth intentionally presented this evidence to obtain an indictment where the Commonwealth presented the grand jury with both the manager's interview and the security video footage, which the grand jury could have seen contradicted each other, and that "given the strength of the evidence before the grand jury, it is highly unlikely that discrepancies influenced the decision to indict" where the grand jury could connect the defendant to the robbery based on the items seized from his house and the images reflected in the security footage of the robbery.  See Silva, 455 Mass. at 509 (dismissal of indictment based on impairment requires finding that evidence probably influenced grand jury's decision to indict).  The motion judge therefore did not err by denying the defendant's motion to dismiss.

3.  Admission of DNA and canine tracking evidence.
"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action." Commonwealth v. Mason, 485 Mass. 520, 533 (2020), quoting Mass. G. Evid. § 401 (2020).  "[R]elevant evidence is subject to exclusion 'if its probative value is substantially outweighed by

a danger of,' among other things, 'unfair prejudice.'"
Commonwealth v. Correia, 492 Mass. 220, 228 (2023), quoting
Mass. G. Evid. § 403 (2023).  "By design, all evidence is meant
to be prejudicial; it is only unfair prejudice which must be
avoided."  Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 188
(2013), quoting United States v. Rodriguez-Estrada, 877 F.2d
153, 156 (1st Cir. 1989).  "Whether evidence is relevant in any
particular instance, and whether the probative value of relevant
evidence is outweighed by its prejudicial effect, are questions
within the sound discretion of the judge."  Commonwealth v.
Dunn, 407 Mass. 798, 708 (1990).  Because the evidence was not
objected to at trial, we review any error in admitting evidence
for "whether the error created a substantial risk of a
miscarriage of justice."  Commonwealth v. Alphas, 430 Mass. 8,
13 (1999).

The defendant alleges that both the DNA evidence linking
the defendant to the mask and the canine dog tracking evidence
were improperly admitted because they were not relevant and
unfairly prejudiced the defendant.  The claim is meritless.

The DNA evidence recovered from the mask was clearly
relevant because the evidence made it more probable that a mask
potentially matching the mask appearing on the store's security
footage belonged to the defendant.  See Mass. G. Evid. § 401
(2025).  The dog tracking evidence was likewise relevant because

11

it made it more probable that someone had recently traveled from the store to the defendant's home.  See Mass. G. Evid. § 401 (2025).  Although the fact that the police dog began chasing a rabbit after tracking to the defendant's home might reduce the strength of the canine tracking evidence, it is the jury's role to determine the evidence's persuasive value.  See Commonwealth v. Lao, 443 Mass. 770, 779 (2005) ("If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province").

We also see no unfair prejudice in the evidence presented where the jury had the opportunity to weigh the strength against the weaknesses of the DNA and canine tracking evidence.  See Kindell, 84 Mass. App. Ct. at 187-188 (noting only unfair prejudice must be avoided).  Because the contested evidence was relevant and not unfairly prejudicial, its admission did not create a substantial risk of a miscarriage of justice.

4.  Prosecutor's closing argument.  "[W]here the defendant failed to object to the prosecutor's argument, our review is limited to whether there was a substantial risk of a miscarriage of justice."  Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).  "[A] prosecutor may argue zealously in support of inferences favorable to the Commonwealth's case that reasonably may be drawn from the evidence."  Commonwealth v. Carriere, 470

12

Mass. 1, 22 (2014). "Remarks made during closing arguments are considered in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." Commonwealth v. Felder, 455 Mass. 359, 368 (2009).

As relevant here, during closing arguments, the prosecutor drew attention to the defendant's testimony that the store was robbed for $800 when the amount taken from the store had not been entered in evidence during the government's case in-chief. The prosecutor also emphasized the strength of the DNA evidence linking the mask to the defendant. The defendant did not object to either of these arguments at trial.[6] The defendant now argues that the prosecutor misled the jury by implying that the defendant knew that $800 had been stolen because he himself stole it. The defendant also asserts that the prosecutor argued that the DNA evidence showed that the mask found in the defendant's home had been used in the robbery and that the prosecutor was shifting the burden of proof to the defendant to prove that the mask had not been used in the robbery. The claim merits little discussion.

---

[6] Although not dispositive, the absence of an objection from trial counsel is some indication that, in context, the prosecutor's words were more innocuous than now argued. See Commonwealth v. Mello, 420 Mass. 375, 380 (1995).

13

It was fair for the prosecutor to highlight the defendant's statements regarding the $800 stolen. See Carriere, 470 Mass. at 22. The amount stolen was not in evidence when the defendant testified that $800 had been stolen, so the jury could have reasonably inferred that the defendant had personal knowledge of the amount stolen because he was guilty of the robbery. While the defendant's learning the amount stolen during pretrial discovery was also a reasonable inference,[7] the defendant never testified as such. It is well settled law that the Commonwealth is permitted to highlight the reasonable inferences that are favorable to its case. See id. As such, there was no error.

With respect to the DNA evidence, the defense attempted to cast doubt on whether the mask found in the defendant's home belonged to him by having the defendant's friend testify that other people used the basement where the defendant lived and where the mask was discovered for storage. It was therefore proper for the prosecutor to comment on the relative strength of the defense's and prosecution's versions of events. See Commonwealth v. Grier, 490 Mass. 455, 473 (2022) (allowing prosecutor to comment on weakness of defense's case even where

---

[7] The manager stated that the robber took $890 during his interview with Podgurski, and another police report states that the clerk estimated the amount stolen at $500 to $700. Neither the report nor the interview was entered in evidence at trial.

14

it might prompt collateral reflection that defendant did not produce certain evidence). The prosecutor did not rely on the DNA evidence to shift the burden of proof to the defendant to show that the mask was not the one used in the robbery but instead to buttress the connection between the mask and the robbery by noting the similar "distinctive pattern" of the mask appearing on the store's surveillance video recording. The prosecutor's reference to the DNA evidence simply closed the inferential chain that the defendant used the mask in the robbery by connecting the mask to the defendant. Accordingly, we conclude that the prosecutor's closing arguments did not create a substantial risk of a miscarriage of justice.

5. <u>Motion to withdraw</u>. "We review the denial of a motion to withdraw counsel for abuse of discretion." <u>Commonwealth</u> v. <u>Melo</u>, 472 Mass 278, 304 (2015). "[T]he trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted" (citation omitted). <u>Commonwealth</u> v. <u>Chavis</u>, 415 Mass. 703, 711 (1993). "The ultimate question is whether the defendant likely would be denied the effective assistance of counsel if counsel is not removed." <u>Commonwealth</u> v. <u>Britto</u>, 433 Mass 596, 601 (2001). "Where, as here, the defendant's ineffective assistance of counsel claim is based on a tactical or strategic decision,

15

the test is whether the decision was manifestly unreasonable when made" (quotations and citation omitted).  Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015).

On the first day of trial, between jury selection and swearing the jury in, the defendant's attorney made an oral motion to withdraw, claiming she was unable to control the defendant's outbursts at trial and the defendant would not listen to her when she talked to him.  The trial judge denied the motion.  The defendant and his attorney repeated the request that she be allowed to withdraw throughout the trial based on the fact that the defendant directed his attorney to make specific objections during witness testimony, making it difficult for the attorney to hear the witness's testimony.  The trial judge also denied these motions.  The defendant contends that these denials were an abuse of the judge's discretion that deprived the defendant of a constitutionally effective defense. We are not convinced.

The judge correctly noted that defense counsel had worked with the defendant for two and a half years and the issues she was raising did not impact her role as effective counsel.  See Britto, 433 Mass. at 600 ("The Sixth Amendment guarantees the right to effective assistance of counsel, but it does not invariably require a meaningful attorney-client relationship" [quotations and citation omitted]).  Likewise, the judge acted

16

squarely within his discretion to deny the mid-trial requests to withdraw based on the defendant's demands for counsel to make specific objections.  See id. at 601.

These denials also did not result in defendant receiving a constitutionally deficient defense where defense counsel's actions at trial were not manifestly unreasonable.  First, as discussed supra, the canine tracking and DNA evidence were admissible.  Objecting to this evidence would have been futile. See Commonwealth v. Collins, 470 Mass. 255, 261 (2014) ("[D]efense counsel was not ineffective for failing to make an objection that would have been futile under the prevailing case law").  Second, further examining the defendant regarding how he came to the $800 figure as the amount stolen without knowing what the defendant's answer would be risked the defendant making further arguably inculpatory statements.  See Kolenovic, 471 Mass. at 674.  The defendant had provided an explanation that ambiguously referred to either of these possibilities, stating, "You all say it was $800."  Finally, although the manager's statements to the police and the police's failure to press him on inconsistencies in his early statements was troubling, importantly the manager did not claim at trial to have personally witnessed the robbery.  Impeaching the manager for his prior false statements was risky and might only have had limited effect on the value of his testimony.  See Commonwealth

17

v. Bart B., 424 Mass. 911, 916 (1997) ("In general, failure to impeach a witness does not prejudice the defendant or constitute ineffective assistance").  Because defense counsel's decisions at trial were not manifestly unreasonable, these decisions do not support the defendant's claim that he received ineffective assistance of counsel.  See Kolenovic, 471 Mass. at 674.

Judgments affirmed.

By the Court (Blake, C.J.,
  Desmond & Singh, JJ.[8]),

Paul Little

Clerk

Entered:  November 19, 2025.

---

[8] The panelists are listed in order of seniority.